# In the United States Court of Federal Claims

No. 20-2033V

(Filed: September 26, 2024)

(Public Filing: January 14, 2026*)

|  |  |
|---|---|
| **THOMAS GOTHERS,** | ) ) ) |
| *Petitioner,* | ) ) ) |
| v. | ) ) ) |
| **SECRETARY OF HEALTH AND HUMAN ERVICES,** | ) ) ) ) |
| *Respondent.* | ) ) ) |

*Timothy J. Mason*, Law Office of Sylvia Chin-Caplan, LLC, Boston, MA, for Petitioner.

*J. Travis Williamson*, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C. for Respondent. With him on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *C. Salvatore D'Alessio*, Director, *Heather L. Pearlman*, Deputy Director, *Gabrielle M. Fielding*, Assistant Director.

**OPINION AND ORDER**

*SOLOMSON*, **Judge.**

Petitioner, Thomas Gothers, filed this action pursuant to the National Vaccine Injury Compensation Program, 42 U.S.C. §§ 300aa-1 *et seq.*, alleging that an influenza vaccination caused various injuries, including a shoulder injury related to vaccine administration ("SIRVA"). ECF No. 1. On April 10, 2024, Chief Special Master Brian H. Corcoran denied his petition for vaccine injury compensation. ECF No. 55. The Chief Special Master concluded that the preponderance of evidence weighed against Mr. Gothers's claim, and, in particular, that his injury did not occur within the requisite 48 hours of vaccine administration, contrary to the Vaccine Injury Table. *Id*. Mr. Gothers now petitions this Court for review of the Chief Special Master's decision. For the reasons explained below, this Court affirms that decision.

1

I.    LEGAL AND FACTUAL BACKGROUND[1]

To receive compensation under the National Vaccine Injury Compensation Program, a petitioner may prove either that he suffered an injury falling within the Vaccine Injury Table (a "table claim" pursuant to 42 U.S.C. § 300aa-11(c)(1)(C)(i)), or that he suffered an injury that was caused by a covered vaccine but first began after the time period required by the table (a "non-table claim" pursuant to 42 U.S.C. § 300aa–11(c)(1)(C)(ii)(II)).  A table claim presumes causation, while a non-table claim requires proof of causation in fact.  *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, 59 Fed. Cl. 38, 44 (2003), *aff'd*, 97 F. App'x 332 (Fed. Cir. 2004) (quoting *Grant v. Sec'y of Dep't of Health & Hum. Servs.*, 956 F.2d 1144, 1148 (Fed. Cir. 1992)).  In this case, Mr. Gothers asserted a table claim.  *See* ECF No. 53 at 2; ECF No. 55 at 1.

Mr. Gothers received an influenza vaccine in his left arm on October 1, 2019.  ECF No. 46 at 4.  Prior to receiving the vaccine, Mr. Gothers had no history of injury to his left shoulder.  *Id*.  He asserts that he began feeling pain in his left shoulder and upper arm immediately after receiving his flu shot.  *Id*.  Mr. Gothers's wife, who has both educational and vocational training in administering vaccines, maintains that Mr. Gothers first told her about his left shoulder pain the day after his flu shot, and that she noticed then that the band-aid on his shoulder was higher than she would have expected it to be based on her training.  *Id*.

Mr. Gothers's wife suggested that the pain might take about three months to heal.  ECF No. 46 at 4.  Mr. Gothers claims that his shoulder pain continued throughout the fall of 2019, and that he attempted to self-treat the pain and adapted his habits and activities during that time.  *Id*.  Throughout the following months, Mr. Gothers made several visits to his optometrist and a chiropractor (the latter for treatment of ankle pain relating to an earlier surgery).  *Id*. at 4–5.  The medical records from those visits do not reflect any reports of left shoulder injury.  *Id*.

On March 2, 2020, Mr. Gothers first sought medical treatment for his left shoulder.  ECF No. 46 at 5.  That visit — as well as subsequent visits to medical professionals — provides conflicting evidence regarding precisely when Mr. Gothers's shoulder pain began.  *Id*. at 5–6.  The record of the first March doctor's visit notes that Mr. Gothers reported pain that "started in 12/2019 after receiving the flu shot."  *Id*. at 5.  The record

---

[*] This decision was initially issued under seal on September 26, 2024, in accordance with Rule 18(b) of the Vaccine Rules of the United States Court of Federal Claims, to permit Petitioner time to propose redactions.  There are no redactions requested by the parties.  Accordingly, this opinion is reissued in full.

[1] Because the parties do not dispute the relevant facts, but rather only disagree about the conclusions to be drawn from them, the Court's recitation of the facts here are drawn almost entirely from ECF No. 46 ("Special Master's Findings of Fact and Conclusions of Law").

from that visit also notes that Mr. Gothers was last seen on October 1, 2019, for a "flu vaccine." *Id*. That evidence clearly supports the conclusion that his pain started well after the 48-hour window of a SIRVA table claim.

On March 30, 2020, Mr. Gothers visited an orthopedist and reported "five months of left shoulder pain" that "began after he got the flu shot in the fall." *Id*. The records do not reflect a precise date or time frame "in the fall." On April 10, 2020, Mr. Gothers went for a physical therapy evaluation during which he reported left shoulder pain "since Oct[tober] 2019 after getting a flu shot." *Id*. The physical therapist noted that Mr. Gothers thought that the pain was from a flu shot that "went into the bursa Oct[ober] 5[,] 2019." *Id*. These records are not inconsistent with Mr. Gothers's assertion that his pain began immediately after his flu shot.

On June 13, 2020, Mr. Gothers's chiropractor recorded that Mr. Gothers's pain "gradually began following a seasonal influenza vaccine." *Id*. No specific timeframe for pain onset is reflected. On August 11, 2020, Mr. Gothers visited a sports medicine clinic and reported that his pain began "after receiving a flu shot on 10/5/2019." *Id*. at 5–6. Again, none of these records expressly contradict Mr. Gothers's assertion that his shoulder pain began within 48 hours of his flu vaccine, but they are equally consistent with the pain having started after the 48-hour window required for a table case.

## II.   PROCEDURAL HISTORY

On December 30, 2020, Mr. Gothers filed a petition in this Court alleging that he "received a seasonal flu vaccine administration on October 1, 2019" and that he subsequently "suffered the onset of [SIRVA] and related conditions." ECF No. 1 at 2. Mr. Gothers further claimed that the "onset of the Petitioner's SIRVA occurred within the time frame specified in the Vaccine Injury Table (42 CFR § 100.3) for the seasonal flu vaccine (i.e., less than or equal to 48 hours)," and that "the symptoms, residual effects, and/or sequelae of the Petitioner's injuries have persisted for more than six (6) months." *Id*. The case was assigned to Chief Special Master Corcoran. ECF No. 4. On October 24, 2022, the Secretary of Health and Human Services filed a Rule 4(c) Report disputing that Mr. Gothers had met his burden to prove that his left shoulder symptoms began within the required 48-hour period, and had therefore not established a SIRVA table claim. ECF No. 38 at 9.

On August 15, 2023, Chief Special Master Corcoran issued his Findings of Fact and Conclusions of Law, dismissing Mr. Gothers's SIRVA table claim on the basis that "Petitioner has not preponderantly established that the onset of his shoulder pain occurred within 48 hours of vaccination …." ECF No. 46 at 8. Chief Special Master Corcoran offered Mr. Gothers the opportunity to proceed with a non-table claim and ordered him to show cause on or before September 29, 2023, as to "why such a claim might be viable, articulating his theory of recovery and citing to other Program decisions in which similarly situated claimants have succeeded." *Id*.

3

On September 14, 2023, Mr. Gothers filed a motion for this Court to review the Chief Special Master's findings of fact and conclusions of law. ECF No. 47. On October 5, 2023, Respondent filed a motion to dismiss Mr. Gothers's motion for review. ECF No. 50. On October 19, 2023, Mr. Gothers responded to Respondent's motion to dismiss. ECF No. 51.

On January 16, 2024, this Court granted Respondent's motion to dismiss, without prejudice, finding that Mr. Gothers's motion for review was premature. ECF No. 52 at 3. This Court held that "only a decision that resolves whether compensation shall be awarded and that may result in an entry of judgment is subject to review by this Court," and since "the Chief Special Master did not issue a final *decision* resolving whether Mr. Gothers is entitled to compensation," this Court did not have jurisdiction to review what was essentially an interim order of a special master. *Id.* at 2. The Court explained further that "[o]nce the Chief Special Master issues a final decision on Mr. Gothers'[s] petition for compensation, he may file a motion for review if warranted." *Id.* at 3.

On January 18, 2024, Chief Special Master Corcoran issued a scheduling order, once again instructing Mr. Gothers to "show cause why his claim is a viable causation-in-fact claim." Minute Entry, Jan. 18, 2024. On February 9, 2024, in response to the Chief Special Master's order, Mr. Gothers filed a status report, in which he requested that the Chief Special Master issue a final decision. ECF No. 53. Mr. Gothers explained, for reasons that are unclear to the Court, that "based on the Findings of Fact and Conclusions of Law regarding injury onset, as they stand now, he does not see an off-Table causation-in-fact claim as a viable path forward." *Id.* at 2. Based on Mr. Gothers's request, Chief Special Master Corcoran issued a final decision on April 10, 2024, dismissing Mr. Gothers's case. ECF No. 55 at 2.

On May 10, 2024, Mr. Gothers filed a motion for review, asserting that the Chief Special Master's "decision was arbitrary and capricious, an abuse of discretion, and not in accordance with law." ECF No. 57 at 22. That motion is now pending before this Court.

## III. STANDARD OF REVIEW

This Court possesses jurisdiction, pursuant to the Vaccine Act, to review a special master's decision upon the filing of a petition from either party within thirty days of that decision. 42 U.S.C. § 300aa-12(e)(1). On review, the Court may:

    (A)  uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,

    (B)  set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law

4

>>and issue its own findings of fact and conclusions of law, or
>
>>(C) remand the petition to the special master for further action in accordance with the court's direction.

42 U.S.C. § 300aa-12(e)(2).

"Under the Vaccine Act, the Court of Federal Claims reviews the Special Master's decision to determine if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" *Markovich v. Sec'y of Health & Hum. Servs.*, 477 F.3d 1353, 1355–56 (Fed. Cir. 2007). "'Arbitrary and capricious' is a highly deferential standard of review: '[i]f the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate.'" *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Hines v. Sec'y of Health & Hum. Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1991)). A special master's statement or interpretation of law is reviewed *de novo*. *Id.* (citing *Markovich*, 477 F.3d at 1356).

While a special master's decision "is entitled to deference," *Morse v. Sec'y of Health & Hum. Servs.*, 93 Fed. Cl. 780, 783 (2010), this Court will find that a special master has abused his discretion if his decision: "(1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact findings; or (4) follows from a record that contains no evidence on which the [special master] could rationally base [his] decision." *Wirtshafter v. Sec'y of Health & Hum. Servs.*, 155 Fed. Cl. 665, 671 (2021) (quoting *Ninestar Tech. Co. v. Int'l Trade Comm'n*, 667 F.3d 1373, 1379 (Fed. Cir. 2012)).[2]

Our appellate court, the United States Court of Appeals for the Federal Circuit, has thus explained that "the statute contemplates that fact finding will be done by the special master." *Munn v. Sec'y of Dep't of Health & Hum. Servs.*, 970 F.2d 863, 870 (Fed. Cir. 1992). Indeed, Congress tasked the special masters with the "unenviable job of sorting through these painful cases and, based upon their accumulated expertise in the field, judging the merits of the individual claims." *Hodges v. Sec'y of Dep't of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993).

## IV. DISCUSSION

At the heart of this dispute is a simple question of fact: did the pain that Mr. Gothers experienced begin within 48 hours of his having received the influenza

---

[2] *See also Spahn v. Sec'y of Health & Hum. Servs.*, 138 Fed. Cl. 252, 257 (2018) ("This Court will find an abuse of discretion only where the special master's decision is clearly unreasonable, based upon an erroneous conclusion of law, rests on erroneous fact finding, or based on a record without evidence to support the special master's decision.").

vaccine, or did the pain begin later?  If it began within 48 hours, then the Vaccine Injury Table requirements have been satisfied, and Mr. Gothers is entitled to compensation.  *See* 42 C.F.R. § 100.3(a)(XIV)(B).  If the pain first occurred after the 48-hour period, then the table claim must be denied.  The Chief Special Master concluded that the evidence did not support Mr. Gothers's table claim.  The evidence is mixed and thus this Court cannot conclude that the Chief Special Master's decision is arbitrary, capricious, unsupported by substantial evidence, or otherwise contrary to law.

Records from Mr. Gothers's various visits to medical professionals provide various date ranges and windows during which the onset of pain occurred, while the assertions of Mr. Gothers and his wife in the proceedings before the Chief Special Master put the onset of pain specifically within 48 hours of Mr. Gothers's vaccine.  ECF No. 46 at 4–5.  Other than their testimony here, however, there is no decisive evidence supporting Mr. Gothers's claim while there is some evidence that undermines it.

Had the task of fact-finding and the weighing of the evidence been delegated to this Court in the first instance — as opposed to the special master — this Court may well have found Mr. Gothers's and his wife's assertions sufficient.  Indeed, viewed in isolation, this Court believes that Petitioner's neglecting to mention his shoulder pain during a visit to an optometrist is irrelevant.  *See* ECF No. 46 at 4.  Similarly, the Court is inclined to agree with Mr. Gothers that his failure to mention shoulder pain during repeated visits to a chiropractor for treatment of an ankle injury are of little import.  ECF No. 57 at 16.  In both cases, the purpose of the medical visits was unrelated to his shoulder.  Moreover, the fact that Mr. Gothers waited five months to seek professional treatment of his shoulder pain may suggest that the pain began after the 48-hour window, ECF No. 46 at 6, but the Court can easily envision reasonable explanations for why a patient may delay seeking treatment (*e.g.,* because he believed the pain was normal or because the pain was not severe).

But those facts do not help Mr. Gothers either.  They do not definitively support Mr. Gothers's claim in a way that somehow requires the Chief Special Master to find in Mr. Gothers's favor.  Even the somewhat helpful facts cannot be viewed in isolation.  In that regard, the Chief Special Master reasonably relied not only upon the length of time between Mr. Gothers's vaccination and his first report of pain to medical professionals, but also upon the conflicting dates of the onset of pain within the various medical reports, a few of which *expressly* place the onset of pain as occurring *after* the 48-hour window.  ECF No. 46 at 6–7.  This constitutes substantial evidence; again, the record must be viewed as a whole.  *See Shapiro v. Sec'y of Health & Hum. Servs.*, 101 Fed. Cl. 532, 540 (2011) ("To be sure, a finder of fact generally is not required to itemize every piece of evidence on an issue and adopt or reject it.… [C]onsistent with the duties imposed by the Vaccine Act, the task of a Special Master is to 'consider [ ] the relevant evidence in the record *as a whole*, draw[ ] plausible inferences and articulate[ ] a basis for his decision which is rational.'" (emphasis added) (quoting *Hines*, 940 F.2d at 1525)).

The Court notes once again that the special master, and not this Court, is tasked

by Congress to be the fact finder in the first instance. *See Munn*, 970 F.2d at 870. In this case, the Chief Special Master, after considering and weighing all of the evidence, concluded that it "preponderantly weighs against a finding of Table onset." ECF No. 46 at 7. That is a factual conclusion — one which this Court cannot characterize as "arbitrary and capricious" or lacking in substantial evidentiary support. *Hines*, 940 F.2d at 1528; *see also Doe v. Sec'y of Health & Hum. Servs.*, 601 F.3d 1349, 1355 (Fed. Cir. 2010) ("[Petitioner] is correct that not all of the evidence in the record supports the special master's findings. That, however, is not the question. On appeal, we must determine whether the special master's findings of fact are supported by substantial evidence."); *cf. Duvall v. United States*, 647 F.2d 131, 134 (Ct. Cl. 1981) ("In exercising this substantial evidence review, the court's role is not to hear the case de novo, but to review the administrative record and determine whether there is substantial evidence on the record as a whole to support the findings of the board.").

Because the Chief Special Master considered all of the "relevant evidence" and drew a "plausible inference" with a "rational basis," his decision is entitled to deference. *Hines*, 940 F.2d at 1528 ("If the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate.").

## V.    CONCLUSION

For all of the above reasons, this Court finds that Chief Special Master Corcoran's decision was not arbitrary, capricious, or otherwise contrary to law. Accordingly, this Court **AFFIRMS** Chief Special Master Corcoran's decision. The Clerk shall enter **JUDGMENT** for the government, dismissing this case.

**IT IS SO ORDERED**.

s/Matthew H. Solomson
Matthew H. Solomson
Judge
